**MARCONA CORPORATION,**
**Plaintiff-Appellee,**

v.

**OIL SCREW SHIFTY III, her engines, tackle, apparel, etc., in rem, et al., Defendants,**

**Nilo Barge Line, Inc., in personam, Defendant-Appellant.**

**No. 79–1877**
**Summary Calendar.***

United States Court of Appeals, Fifth Circuit.

April 7, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Brendan P. O'Sullivan, Tampa, Fla., for defendant-appellant.

C. Steven Yerrid, Julian D. Clarkson, Tampa, Fla., for plaintiff-appellee.

Before GEE, HENDERSON and HATCHETT, Circuit Judges.

HENDERSON, Circuit Judge:

This is an admiralty action growing out of a collision between the M/V Marcona Conveyer (hereinafter referred to as the "Marcona") and the Shifty III (hereinafter referred to as the "Shifty") and her tow, the barge SBI 513. The incident occurred when the Shifty struck turbulent quickwater generated by two tugs operating at right angles to the Marcona, which was in the final process of mooring at the Portland Cement Terminal on the easterly side of Sparkman Channel in Tampa Harbor.

The district court found that the captain of the Shifty did not appreciate the possible danger from the quickwater. He also determined that neither the Shifty nor her barge had a proper lookout and that no communication was made either by radio or whistle signal from the Shifty prior to the collision. Thus, he concluded that

The proximate cause of the collision and the damages sustained by the [Marcona] CONVEYOR was the negligence of the tug SHIFTY, Barge SBI 513, and its owners including those in control of the defendant vessels and the negligent navigation of the SHIFTY and SBI 513 in failing to take the ncessary [sic] actions and precautions to avoid a collision with plaintiff's properly mooring vessel.

Nilo Barge Lines, Inc. (hereinafter referred to as "Nilo"), the owner of the Shifty and the SBI 513, asserts three grounds in its appeal from the district court's judgment awarding the Marcona Corporation, the owner of the Marcona, $87,870.25 in damages incurred as a result of the collision.

Nilo first complains that the district court erred in not finding that the alleged negligence of the Marcona was the sole proximate cause, or at least a contributing cause, of the collision.

In an admiralty case, in which a judge, sitting without a jury, makes findings of fact and conclusions of law, questions of negligence and proximate cause are treated as fact questions. *S.C. Loveland, Inc. v. East West Towing, Inc.*, 608 F.2d 160, 166 (5th Cir. 1979). And the district court's findings of fact in an admiralty case are binding unless clearly erroneous. Rule 52(a), Fed.R.Civ.P.; *McAllister v. United States*, 348 U.S. 19, 20, 75 S.Ct. 6, 9, 99 L.Ed. 20, 24 (1954); *S.C. Loveland, supra*, at 166. Here, the district judge found that the Shifty failed to appreciate the danger from the wheelwash, failed to have a proper lookout, and failed to communicate either by radio or whistle signal. From these findings, the district court concluded that the Shifty's negligence was the sole proximate cause of the collision. Our review of the record indicates that the trial judge's findings and conclusions are not clearly erroneous.

Next, Nilo argues that the Marcona committed certain statutory violations, and that because of these infractions the "Pennsylvania Rule" should control in this case. In *The Pennsylvania*, 86 U.S. (19 Wall.) 125, 22 L.Ed. 148, 151 (1874), the Supreme Court held that "when . . . a ship at the time of a collision is in actual violation of a statutory rule intended to prevent collisions it is no more than a reasonable presumption that the fault, if not the sole cause, was at least a contributory cause of the disaster. In such a case the burden rests upon the ship of showing not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been."

Nilo first points to 33 U.S.C.A. § 155 which simply defines when a vessel is "underway." The district court found that the Marcona was not underway, and Nilo does not even suggest that this finding is clearly erroneous. Thus, to the extent that any of the statutes depend on the vessel being "underway," they are inapplicable. Similarly, the second statute, 33 U.S.C.A. § 203, Rule III, governs only "when steam vessels are approaching each other."

■ To constitute a violation of 33 U.S.C.A. § 212, also cited by Nilo, it would be necessary to show that the Marcona failed to give due regard to the dangers of navigation and collision or that she failed to depart from the applicable rules of navigation in order to avoid immediate danger. The former is precluded by the district court's finding that the Shifty's negligence was the sole proximate cause of the collision. As for the latter, the appellant does not allude to any rule followed by the Marcona when circumstances required otherwise.

■ Likewise, the charge that the Marcona and her assisting tugs disregarded 33 U.S.C.A. § 221 by failing to signal and post a lookout lacks merit. There is no absolute duty to maintain a lookout or signal other vessels during the final stages of mooring. Absent a fixed requirement, the question of whether these precautions are necessary "is one of fact to be determined from all the circumstances on the basis of common prudence . . . ." *China Union Lines, Ltd. v. A. O. Andersen & Co.*, 364 F.2d 769, 783 (5th Cir. 1966), *cert. denied*, 386 U.S. 933, 87 S.Ct. 955, 17 L.Ed.2d 805 (1967) (construing Article 29 of the Inland Rules, 33 U.S.C.A. § 221; *see, China Union Lines, supra*, at 781 & n. 4). Here, as noted earlier, the district judge held that the Shifty's negligence was the sole proximate cause of the collision. That finding implicitly includes the conclusion that the Marcona and her tugs were not negligent. Thus, the Marcona and her tugs could not have violated § 221 by failing to have a lookout or signal the Shifty.

■ Finally, the Nilo refers to 33 U.S.C.A. § 409, which states that "[i]t shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft . . . ." However, it is undisputed that the Marcona and her assisting tugs blocked only about half of Sparkman Channel.

■ Because the Marcona and her tugs did not violate any of the cited statutes, there was no reason to apply the "Pennsylvania Rule."

■ The third assignment of error challenges the award of damages to the Marcona for a portion of her annual drydocking costs which would have been incurred whether the collision damages were repaired or not. The district court found support for its apportionment of the costs among normal maintenance, damage due to unrelated incidents, and damage due to this collision, in *Mitsui O.S.K. Lines, K.K. v. Horton & Horton, Inc.*, 480 F.2d 1104 (5th Cir. 1973). Nilo argues that *Mitsui* is distinguishable because there the ship was required to remain in the shipyard an extra three days beyond the time normally required for its annual drydocking solely because of the damage done to the vessel, while here the damage did not require the Marcona to stay at the shipyard any time beyond that which would otherwise be required. This distinction does not invalidate the *Mitsui* analogy in this case.

In *Mitsui* we held that

Damages need not be proved with an exact degree of specificity. It suffices if a state of facts is shown from which a court or jury can find with reasonable certainty that the damages claimed were actually or may be reasonably inferred to have been incurred as a result of the collision. Our standard of review of factual findings of this sort is the "clearly erroneous rule" . . . .

480 F.2d at 1106. The ship's remaining three extra days in the shipyard was simply a fact the court took into account in determining how the repair costs should be ap-

portioned between normal maintenance and repairs necessitated by the collision in *Mitsui*. Here, the district judge divided the type of repairs performed on the Marcona into four categories, one of which was those repairs made necessary by the collision with the defendants. We believe this is as accurate an apportionment as could be attempted, and find that the judge's conclusions are not clearly erroneous. *Id.*

AFFIRMED.

* Fed.R.App.P. 34(a); 5th Cir. Rule 18.