| GABRIELLE PRANGE | * | NO. 2022-CA-0702 |
|---|---|---|
| VERSUS | * | |
| | | COURT OF APPEAL |
| ERNEST POSEY, | * | |
| PROGRESSIVE SECURITY | | FOURTH CIRCUIT |
| INSURANCE COMPANY, | * | |
| DAVID FORLY, ABC | | STATE OF LOUISIANA |
| INSURANCE COMPANY & | * * * * * * * | |
| XYZ INSURANCE COMPANY | | |

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2017-06821, DIVISION "M"
Honorable Paulette R. Irons, Judge
* * * * * *
**Judge Rachael D. Johnson**
* * * * * *

(Court composed of Judge Joy Cossich Lobrano, Judge Rachael D. Johnson, Judge Nakisha Ervin-Knott)

**LOBRANO, J., CONCURS IN THE RESULT AND ASSIGNS REASONS**

Caleb H. Didriksen, III
Erin Bruce Saucier
Carl A. "Trey" Woods
DIDRIKSEN SAUCIER WOODS & PICHON
3114 Canal Street
New Orleans, LA 70119


COUNSEL FOR PLAINTIFF/APPELLANT


Derek Anthony Walker
Alexander J. DeGiulio
CHAFFE MCCALL, LLP
1100 Poydras Street
2300 Energy Centre
New Orleans, LA 70163-2300


COUNSEL FOR DEFENDANTS/APPELLEES

**AFFIRMED**
**February 28, 2023**

## INTRODUCTION

*RDJ*
*NEK*

This is a maritime personal injury case. Plaintiff/Appellant, Gabrielle Prange ("Ms. Prange"), appeals the trial court's August 12, 2022 final judgment against Ms. Prange and in favor of Defendants, Mr. Ernest Posey ("Mr. Posey"), Mr. David Forly ("Mr. Forly"), Progressive Paloverde Insurance Company, ABC Insurance Company, and XYZ Insurance Company following a three-day bench trial in December 2021. For the reasons that follow, after considering the record before this Court and the applicable law, we affirm.

## FACTS AND PROCEDURAL HISTORY

On July 16, 2016, Ms. Prange was injured while on a recreational boat as a passenger. Mr. Posey owned the boat, and Mr. Forly (collectively, "Defendants") operated the boat. There were eight people aboard the recreational vessel, including Mr. Posey's two minor daughters. It is undisputed that the boat was operating at capacity with a total of eight people aboard.

Prior to the accident at issue in this case, the group initially spent some time at a pool, beach, and restaurant before embarking on Mr. Posey's boat to go kneeboarding. After kneeboarding, Defendants decided to go into the Gulf of

1

Mexico through Perdido Pass in southeastern Alabama. While traversing through Perdido Pass, a large yacht approached from the opposite direction and generated a large wake. It is undisputed that Mr. Forly initially failed to gauge the speed at which the yacht was coming towards them, and it is also undisputed that Defendants warned the passengers to hold on while they crossed the wake.

Mr. Forly approached the oncoming yacht's wake at a forty-five degree angle in order to reduce the wake's impact, but Ms. Prange, who was sitting on the bow seat of the boat, was lifted into the air from her seat when the oncoming yacht's wake reached the bow of the boat. Ms. Prange landed on her tailbone and fractured her spine. No other passenger aboard was lifted into the air or was otherwise injured as a result of the oncoming yacht's wake.

Ms. Prange sued Defendants as well as their insurer, Progressive Paloverde Insurance Company, on July 14, 2017, asserting negligence claims. The instant action went to trial from December 1 until December 3, 2021. At the close of trial, the trial court took the matter under advisement. In an August 12, 2022 judgment with written reasons, the trial court ordered that judgment be entered in favor of Defendants and against Ms. Prange. The trial court further ordered that Defendants were not liable for Mr. Prange's injuries.

In the trial court's written reasons for judgment, the trial court explained that "[t]he first threshold question in a negligence case is whether the Defendant boat captain owed a duty to the Plaintiff" and found that "Defendants did owe such a duty" to Ms. Prange. The trial court further concluded, however, that Defendants in the instant suit "did ultimately act reasonably as the owner and operator of the vessel and as such they did not breach the duty owed" to Ms. Prange. Accordingly, because the trial court found that Defendants did not breach their

duty to Ms. Prange, it further concluded that Ms. Prange had "failed to prove all the required elements of her negligence claim" and that "Defendants are not liable for any injury" that Ms. Prange sustained.

This appeal followed.

## DISCUSSION

### Assignments of Error

On appeal, Ms. Prange raises five assignments of error, arguing that the trial court erred: (1) "as a matter of law by ignoring specific duties" Defendants owed to Ms. Prange under the federal maritime *Inland Navigational Rules*; (2) "as a matter of law by failing to require Defendants to prove that they were not the cause of [Ms. Prange's] injuries" in accordance with *The Pennsylvania Rule*; (3) when it "fail[ed] to give [Ms. Prange] the guest passenger presumption"; (4) because it discounted Ms. Prange's testimony concerning Defendants' alleged consumption of alcohol prior to the boat trip giving rise to Ms. Prange's injuries; and (5) when it excluded the testimony of Ms. Prange's treating physician, Dr. Eric Lonseth, M.D. ("Dr. Lonseth"), regarding future medical damages.

### Standard of Review

"Louisiana courts of appeal should apply the state manifest error standard of review in general maritime and Jones Act cases." *Milstead v. Diamond M Offshore, Inc.*, 95-2446, p. 11 (La. 7/2/96), 676 So.2d 89, 96. "Under the manifest error standard, a factual finding cannot be set aside unless the appellate court finds that it is manifestly erroneous or clearly wrong." *Coutee v. Glob. Marine Drilling Co.*, 05-0756, p. 5 (La. 2/22/06), 924 So.2d 112, 116 (citing *Smith v. La. Dept. of*

3

*Corr.*, 93-1305 (La. 2/28/94), 633 So.2d 129, 132) (additional citations omitted). Concerning findings of fact, "an appellate court must review the record in its entirety and (1) find that a reasonable factual basis does not exist for the finding, and (2) further determine that the record establishes that the fact finder is clearly wrong or manifestly erroneous." *Id.* (citing *Stobart v. State ex rel. Dept.of Transp. & Dev.*, 617 So.2d 880, 882 (La. 1993)) (additional citations omitted). Additionally, an appellate court cannot "re-weigh the evidence or substitute its own factual findings because it would have decided the case differently." *Id.* (citing *Stobart*, 617 So.2d at 882) (additional citations omitted). Finally, "[w]here there are two permissible views of the evidence, the fact finder's choice between them cannot be manifestly erroneous or clearly wrong." *Id.* (citing *Stobart*, 617 So.2d at 882) (additional citations omitted).

**Applicable Law**

*a. General Maritime Law*

Federal district courts have subject matter jurisdiction for all "cases of admiralty and maritime jurisdiction." U.S. CONST. art. III, § 2. "State courts, however, have concurrent jurisdiction by virtue of the 'savings to suitors' clause of the Judiciary Act of 1789." *Dragon v. Cooper/T. Smith Stevedoring Co., Inc.*, 98-1375, p. 6 (La. App. 4 Cir. 1/6/99), 726 So.2d 1006, 1009. For cases arising under maritime jurisdiction, state courts "are bound to apply substantive federal maritime statutory law and to follow United States Supreme Court maritime jurisprudence." *Id.* at 7, 726 So.2d at 1009 (citing *Milstead*, 95-2446, p. 8, 676 So.2d at 94). It is

4

undisputed that the instant suit arises under general maritime law, as the accident at issue occurred on the navigable waters of the United States. *See Giorgio v. Alliance Operating Corp.*, 05-0002, pp. 9-10 (La. 1/19/06), 921 So.2d 58, 66-67.

  *b. Negligence under General Maritime Law*

  "'[N]egligence is an actionable wrong under general maritime law," and the elements of that tort are 'essentially the same as land-based negligence under the common law.'" *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 211 (5th Cir. 2010) (quoting *Withhart v. Otto Candies, L.L.C.*, 431 F.3d 840, 842 (5th Cir. 2005)). "To prevail on a maritime negligence claim, a plaintiff must prove that (1) the defendant owed a duty to the plaintiff, (2) the defendant breached that duty, (3) the breach actually and proximately caused the plaintiff's injury, and (4) the plaintiff sustained an injury." *SCF Waxler Marine LLC v. M/V ARIS T*, 427 F.Supp.3d 728, 758 (E.D. La. 2019) (citing *Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1253 (11th Cir. 2014); *In re Great Lakes Dredge*, 624 F.3d at 211).

  "One threshold inquiry in any negligence action is whether the defendant owed the plaintiff a duty." *Wynne v. Trotter*, 10-0090, p. 4 (La. 4 Cir. 6/30/10), 46 So.3d 678, 682. "[A]s applied to vessel owners and operators, '[i]t is a settled principle of maritime law that a shipowner owes the duty of exercising reasonable care towards those lawfully aboard the vessel who are not members of the crew.'" *Humphrey v. Tidewater GOM, Inc.*, No. 20-817-JWD-RLB, 2022 WL 2912561, at *6 (M.D. La. Jul. 22, 2022) (quoting *Kermarec v. Compagnie Generale Transatlantique*, 358 U.S. 625, 630 (1959)). "The standard of care, or duty, is a

question of law that is established by statutes, rules, regulations, maritime custom, or general principles of negligence law." *SCF Waxler Marine LLC*, 427 F.Supp.3d at 759 (citing *S.C. Loveland, Inc. v. East West Towing, Inc.*, 608 F.2d 160, 165 (5th Cir. 1979) (additional citations omitted)).

When a statute or regulation "establishes a clear minimum standard of care," violation of the statute or regulation results in the application of the doctrine of negligence *per se*, replacing the standard of reasonable care. *See Dougherty v. Santa Fe Marine, Inc.*, 698 F.2d 232, 234-35 (5th Cir. 1983). Accordingly, "failure to follow any Coast Guard regulation which is the cause of an injury establishes negligence *per se*." *Id.* at 234 (citing *Kernan v. Am. Dredging Co.*, 355 U.S. 426, 438-39 (1958) (additional citations omitted).

### c. *The* Pennsylvania *Rule*

"The *Pennsylvania* Rule instructs that a party who violates a statutory rule intended to prevent maritime accidents is presumed to have caused the accident." *SCF Waxler Marine LLC*, 427 F. Supp.3d at 759. "In such a case the burden rests upon the ship of showing not merely that her fault might not been one of the causes, or probably was not, but that it could not have been." *The Pennsylvania*, 86 U.S. 125, 136 (1874). The *Pennsylvania* Rule is "an evidentiary presumption 'designed to fill a factual vacuum'" and is therefore "inapplicable where 'the parties have introduced evidence to dispel the mysteries that gave rise to the presumption[].'" *SCF Waxler Marine LLC*, 427 F. Supp.3d at 760 (quoting *In re Mid-S. Towing Co.*, 418 F.3d 526, 531 (5th Cir. 2005)).

### d. *Federal Maritime* Inland Navigational Rules

The federal maritime *Inland Navigational Rules*, codified at 33 C.F.R. §83.01 *et seq*., "provide the 'rules of the road' for vessels navigating on the inland waters of the United States," and "[t]he broad purpose of these rules is to prevent collisions." *Kirby Inland Marine v. FPG Shipholding Co.*, 548 F.Supp.3d 613, 625 (S.D. Tex. Jul. 8, 2021). The *Inland Navigational Rules* "impose a duty of care on vessel owners and operators to operate such vessels under the 'rule of good seamanship' and in a safe and seaworthy manner." *In re Marquette Transp. Co.*, 292 F.Supp.3d 719, 732 (E.D. La. Feb. 14, 2018) (citing THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW 760-64 (2d ed. 1994)).

## ANALYSIS

### Defendants' Duty to Ms. Prange

For her first assignment of error, Ms. Prange contends that Defendants breached the duty they owed to Ms. Prange and that the trial court erred as a matter of law when it "ignored the Federal Inland Navigation Rules." Ms. Prange further contends that Defendants violated federal maritime *Inland Navigational Rule 5* because Defendants "admitted that [Mr.] Forly failed to keep a proper lookout." She also asserts that federal maritime *Inland Navigational Rule 8* and *16* apply to the instant action and that Defendants violated *Inland Navigational Rule 8*, which requires vessel operators to avoid collisions, because Defendants "fail[ed] to appreciate the size and speed of the wake" and because Defendants "fail[ed] to alter [their] speed or course." Additionally, Ms. Prange argues that Defendants violated federal maritime *Inland Navigational Rule 9* because Defendants failed to move the vessel further starboard while navigating through Perdido Pass. Finally,

Ms. Prange asserts that Defendants violated the *Inland Navigational Rules* by consuming alcohol prior to operating the vessel on July 16, 2016.

Defendants argue that the trial court correctly concluded that Defendants "did not breach the duty of care owed to [Ms.] Prange and were therefore not negligent and not liable for her injuries." Defendants further argue that they owed Ms. Prange a duty of reasonable care and the trial court "correctly considered all of the relevant factors in this case."

While the testimony over the course of the three-day bench trial often did not refer to the above *Inland Navigational Rules* explicitly by name or number, our review of the record indicates that the trial court heard ample testimony concerning boater safety as well as the duties of vessel owners and operators owed to passengers and ultimately concluded that Defendants did not breach the duty of reasonable care that they owed to Ms. Prange.[1] The trial court also did not find that Defendants violated a statute or regulation. We agree with the trial court.

*Inland Navigational Rule 5* requires that "[e]very vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision." 33 C.F.R. § 83.05. *Inland Navigational Rule 6* provides, in pertinent part, that "[e]very vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions." 33 C.F.R. § 83.06. *Inland Navigational Rule 9*

---

[1] While Ms. Prange asserts that Defendants violated *Inland Navigational Rules 8* and *16*, our review of the record before this Court indicates that Ms. Prange did not submit either violation to the trial court for review. Accordingly, we conclude that they are beyond the scope of this Court's review pursuant to Rule 1-3 of the Uniform Rules, Courts of Appeal.

requires vessels in narrow channels to "keep as near to the outer limit of the channel or fairway which lies on her starboard side as is safe and practicable." 33 C.F.R. § 83.09.

At trial, Defendants' expert, Keith Dean ("Mr. Dean"), testified that the vessel operator and captain "should not be negligent or operating in an unsafe manner." As to Defendants' actions, Mr. Dean testified that Mr. Forly operated the vessel at an appropriate speed, namely three to five nautical miles per hour, at the time of the accident and that Mr. Forly employed "standard practice" when he approached the oncoming yacht's wake at an angle. Even assuming Mr. Forly misjudged the speed of the oncoming yacht, Mr. Dean testified that "the action Mr. Forly took was correct." Mr. Dean further testified Defendants' warnings prior to traversing the wake amounted to "normal practice." Mr. Dean ultimately concluded that he would not have done anything differently than the actions Defendants took at the time of the accident.

Additionally, Mr. Dean cautioned against bringing the boat to a stop in advance of an oncoming wake. He testified that such a tactic "probably would be the worst thing to do" because some forward momentum is needed to maintain control of the vessel. He further cautioned against stopping in the Perdido Pass due to the other boat traffic nearby, testifying that an unexpected stop "would not have been prudent." Mr. Dean testified that stopping the vessel because a passenger is not heeding safety instructions is "not written anywhere" and "impractical." Additionally, Mr. Dean cautioned against turning the vessel to the right or starboard in anticipation of an oncoming wake, testifying that "exposing the side of [the] boat to the waves" amounts to "a much more dangerous situation [than] meeting the wave with the bow of the boat."

9

Ms. Prange's expert witness, Captain Dale Casey ("Captain Casey"), testified as an expert for the first time in the instant trial and testified that the methodology he employed to assist the trial court in this case was that he "kept [his] personal boat in Orange Beach for eight years" and has "traversed [Perdido] Pass many times." As to the duties and responsibility of captains and vessel operators, Captain Casey testified that they are "[f]ully responsible" and that no situation exists "in which a passenger could be injured on the boat [] where the captain or the operator was not at fault for that injury." He further testified that the captain is required "[t]o maintain a safe speed at all times" and that Defendants' speed of three to five nautical miles was unsafe because Ms. Prange sustained an injury. Additionally, Captain Casey testified that captains and vessel operators "[s]hould always be aware of [their] surroundings." Concerning passengers who fail to comply with safety instructions, Captain Casey testified that a captain is required to stop the vessel and "turn around until the person listened." He conceded, however, that "sometimes it is more dangerous to stop a boat than to proceed." He further testified that a boat should approach an oncoming wake at an angle.

The trial court, while not referring to the *Inland Navigational Rules* specifically by name or number, found no violation of any of the above *Inland Navigational Rules* based expert testimony presented at trial. Accordingly, the trial court concluded that Defendants owed a duty of reasonable care to Ms. Prange and that Defendants "did ultimately act reasonably as the owner and operator of the vessel." In reaching that conclusion, the trial court adopted Mr. Dean's findings and rejected many of Captain Casey's findings, expressing

concerns as to the accuracy and reliability of Captain Casey's testimony.[2]  Under the manifest error standard of review, we find that the trial court's "conclusion was a reasonable one."  *Stobart v. State ex. rel. Dept. of Transp. & Dev.*, 617 So.2d 880, 882 (La. 1993).  We therefore conclude that the trial court correctly determined that Defendants did not breach the duty of reasonable care that they owed to Ms. Prange and are therefore not liable for the injuries she sustained while aboard the vessel.

**The *Pennsylvania* Rule**

With respect to her second assignment of error, Ms. Prange contends that because Defendants violated the above *Inland Navigational Rules* as well as their "duty to operate the boat in a careful, safe, prudent, reasonable, and non-negligent manner so as not to endanger her life or property," the trial court erred when it failed to apply The *Pennsylvania* Rule to the instant action.  Ms. Prange further contends that, under The *Pennsylvania* Rule, the burden of proof for causation shifts to require Defendants to show that their actions "could not have been the cause of [Ms. Prange's] accident," which she asserts they failed to do.

Defendants argue that the trial court did not err when it failed to apply The *Pennsylvania* Rule because it was not required to do so in the absence of a statutory violation.  We agree.

---

[2] Ms. Prange also contends that the trial court erroneously "disregarded Captain Casey's testimony regarding [the *Inland Navigational Rules*] as nonsensical or biased towards [Ms. Prange]" and rejected Captain Casey's testimony "without justification."  We disagree.  To the contrary, the record reflects that the trial court heard Captain Casey's testimony over numerous objections from Defendants, including a pretrial motion to strike Captain Casey's testimony as well as multiple objections and Defendants' reiteration of that same motion to strike at trial.  The trial court acknowledged that Defendants made a "good point" in raising concerns as to the methodology Captain Casey utilized in reaching his conclusions but allowed Captain Casey to testify as to boater safety.  In sum, we find that the trial court weighed "two permissible views of the evidence" and committed no manifest error in agreeing with Mr. Dean's findings and rejecting Captain Casey's.  *Stobart*, 617 So.2d at 883 (citing *Canter v. Koehring Co.*, 283 So.2d 716, 724 (La. 1973)).

As outlined above, the threshold requirement for the application of The *Pennsylvania* Rule is the existence of a statutory violation. *See Candies Towing Co. v. M/V B & C Eserman*, 673 F.2d 91, 93 (5th Cir. 1982) (citing *The Pennsylvania*, 86 U.S. at 136) ("In simplest terms, that rule states that where a vessel is guilty of a statutory violation, the defaulting ship must show 'not merely that her fault might not have been one of the causes, or that it probably was not, but that it could not have been.'"); *Marcona Corp. v. Oil Screw Shifty III*, 615 F.2d 206, 209 (5th Cir. 1980) (holding that, "[b]ecause the [vessel] and her tugs did not violate any of the cited statutes [at issue on appeal], there was no reason to apply the "Pennsylvania Rule"). As the trial court correctly did not find that Defendants violated a statute or regulation, the trial court properly declined to apply The *Pennsylvania* Rule to the instant suit. Accordingly, we find that Ms. Prange's second assignment of error is without merit.

**The Guest Passenger Presumption**

Concerning her third assignment of error, Ms. Prange argues that the trial court erred as a matter of law when it failed to afford Ms. Prange "the benefit of the guest passenger presumption," which Ms. Prange further argues applies to boat passengers in the same manner as automobile passengers and requires "defendant drivers . . . to exculpate themselves from fault in cases where the passenger is innocent from involvement in the accident." Instead, Ms. Prange asserts that the trial court committed "reversible error" when it "replace[d] Louisiana's comparative fault system with an outdated assumption of the risk doctrine" because the trial court "found [Ms. Prange] responsible for her own safety" while aboard the vessel.

12

Defendants assert that the guest passenger presumption does not apply to the instant action because the trial court "determined [Ms. Prange] was comparatively at fault for her injuries, and the presumption requires that the passenger be free of fault."

We find Ms. Prange's third assignment error to be without merit. Ms. Prange's contention that the trial court employed an assumption of the risk doctrine to conclude that she was "responsible for her own safety on the [b]oat" is a mischaracterization of the trial court's inquiry. As the trial court indicated, its discussion of Ms. Prange's conduct and familiarity with boating was part of its overall evaluation of whether the Defendants acted reasonably under the circumstances. *See Kermarec*, 358 U.S. at 632 ("We hold that the owner of a ship in navigable waters owes to all who are on board for purposes not inimical to his legitimate interests the duty of exercising reasonable care under the circumstances of each case."). It is also relevant to the passenger's duty of reasonable care under general maritime law, to which the trial court alluded but declined to issue a ruling because the trial court found that Defendants did not breach their duty of reasonable care and were therefore not liable to Ms. Prange. *See* THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW 140 (6th ed. 2019) ("Passengers have a duty to exercise reasonable care for their own safety, and the comparative fault doctrine applies in passenger cases."); *Day v. Touchard, Inc.*, 97-1180, p. 10

13

(La. App. 5 Cir. 5/27/98), 712 So.2d 1072, 1076-77 (explaining that "a guest aboard a vessel is owed the duty of reasonable care under the circumstances" and that, "[i]n turn, the passenger must also exercise reasonable care and prudence for his own safety"). Accordingly, we conclude that the trial court did not utilize an assumption of the risk analysis in the instant action.

We also find that the trial court correctly declined to afford Ms. Prange a guest passenger presumption because the trial court did not evaluate whether Ms. Prange was contributorily negligent for her injuries, and the guest passenger presumption arises in cases where the passenger's contributory negligence is at issue. As explained in the Louisiana Supreme Court's decision in *Delaune v. Breaux*, guest passengers can be held contributorily negligent for their injuries in certain circumstances:

> [W]hile it is unquestionably true that a guest, as has often been held, must exercise reasonable care and diligence to protect himself by making it possible for the driver to avoid an accident, but it does not follow that he is constantly under obligation to look out for sudden or unexpected dangers that may arise ahead. He may rely reasonably on the driver to discharge that obligation. Where, however, the guest is aware of the fact that there is danger ahead, which apparently is unknown to the driver or may be unknown to him, or where a sudden unexpected danger arises to the knowledge of the guest, apparently not observed by the driver, it is the duty of the guest to warn the driver of it at once, and if the guest fails to do so, he is guilty of negligence contributing to the accident and cannot recover.

139 So. 753, 755 (La. 1932). Louisiana courts have extended this presumption to passengers in boats when evaluating whether they were contributorily negligent for their injuries. *See, e.g., Gasquet v. Commercial Union Ins. Co.*, 391 So.2d 466,

14

476 (La. App. 4th Cir. 1980) (citing *Beavers v. Butler*, 188 So.2d 725, 729 (La. 2d Cir. 1966). Without a finding that Ms. Prange was contributorily negligent for her injuries, however, the guest passenger presumption simply does not apply to the instant suit. Accordingly, we find the district court correctly declined to afford Ms. Prange the guest passenger presumption under Louisiana law.

**Ms. Prange's Testimony Regarding Defendants' Alcohol Consumption**

As to her fourth assignment of error, Ms. Prange asserts that the trial court erred when it "entirely discredited" Ms. Prange's testimony concerning Defendants' alleged alcohol consumption on July 16, 2016. She further asserts that the trial court erred when it "entirely ignored the corroborating testimony" of Justin Lee ("Mr. Lee"), Mr. Prange's husband, which was in the form of a stipulation submitted at trial.

Defendants contend that the trial court correctly declined to conclude that Mr. Forly was intoxicated at the time of the accident because Ms. Prange "produced no corroborating evidence of drinking, let alone intoxication" on July 16, 2016.

We find that the trial court did not err when it afforded little weight to Ms. Prange and Mr. Lee's testimony. In its written reasons for judgment, the trial court found that "there [was] little to no evidence" in support of Ms. Prange's assertion that Defendants consumed alcohol prior to or during the boat ride on the date of the accident. The trial court explained that the only testimony concerning Defendants' consumption of alcohol was from Ms. Prange and Mr. Lee and that Mr. Lee "was not even present on the boat on the day of the accident." The trial court further explained that no one present on the boat on the date of the accident and no other evidence, such as photographs, receipts, or findings from emergency personnel,

15

corroborated Ms. Prange's contention that Defendants consumed alcohol. Accordingly, the trial court afforded little weight to Ms. Prange and Mr. Lee's testimony.

At trial, Defendants testified that they did not consume alcohol prior to or during the boat ride. Mr. Forly testified that he had a medical condition that prevented him from drinking. Mr. Forly conceded, however, that he consumed approximately two ounces of wine while cooking dinner later in the evening following the accident. Megan Posey ("Ms. Posey"), who was aboard the boat on the date of the accident, testified that, "[t]o [her] knowledge, [Mr. Forly] was sober and was operating the boat safely [and] conservatively." She further testified that, despite being underage, she had consumed "[p]robably a beer or two" prior to the boat ride on the date of the accident and that such practice was commonplace while on a family vacation. She corroborated Mr. Forly's testimony that Mr. Forly was not consuming alcohol during the time period around the date of the accident due to a medical condition.

"When findings are based on determinations regarding the credibility of witnesses, the manifest error—clearly wrong standard demands great deference to the trier of fact's findings; for only the factfinder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said." *Rosell v. ESCO*, 549 So.2d 840, 844 (La. 1989) (citing *Canter*, 283 So.2d at 724). Moreover, without documentation or other contradictory "objective evidence" that renders Defendants' testimony "so internally inconsistent or so implausible on its face" that a reasonable finder of fact would not credit it, the trial court's decision to credit Defendants' and Ms. Posey's testimony simply does not amount to a manifest error. *Id.* at 844-845.

Accordingly, we find that the trial court did not err when it credited the testimony of Defendants and Ms. Posey and afforded little weight to Ms. Prange's testimony and Mr. Lee's stipulation submitted at trial.

**Dr. Eric Lonseth's, M.D., Testimony Concerning Future Medicals**

Finally, regarding her fifth assignment of error, Ms. Prange argues that the trial court erred when it limited Dr. Lonseth's testimony concerning future medical damages. Ms. Prange acknowledges that the trial court "allowed some testimony from Dr. Lonseth," but nonetheless argues that the trial court committed manifest error when it excluded his testimony at trial as well as his expert report.

Defendants assert that because Ms. Prange "failed to prove negligence or breach of duty, [she] has no basis to recover any damages." Accordingly, Defendants contend that the trial court "properly did not discuss Dr. Lonseth's testimony nor rule on future medical costs."

We pretermit discussion of this assignment of error, having already determined that Ms. Prange failed to prove that Defendants were negligent and therefore liable for her injuries.

## DECREE

For the foregoing reasons, we affirm the trial court's August 12, 2022 judgment in favor of Defendants and against Ms. Prange, finding that Defendants were not liable for Ms. Prange's injuries.

**AFFIRMED**

17